UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMIE LOPEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CEQUEL COMMUNICATIONS, LLC, d/b/a SUDDENLINK COMMUNICATIONS; and DOES 1–25, inclusive,<br><br>Defendants. | No. 2:20-cv-02242-TLN-JDP<br><br>**ORDER** |

This matter is before the Court on Defendant Cequel Communications, LLC d/b/a/ Suddenlink Communication's ("Defendant") Motion to Compel Arbitration and Stay Litigation. (ECF No. 13.) Plaintiff Jamie Lopez ("Plaintiff") filed an opposition. (ECF No. 14.) Defendant filed a reply. (ECF No. 17.) For the reasons set forth below, the Court GRANTS Defendant's motion.

///
///
///
///
///

1

### I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant is an internet service provider for consumers, such as Plaintiff, in Placer, El Dorado, and Nevada Counties in California. (ECF No. 1-1 at 8.) Plaintiff alleges that although Defendant "promises reliable broadband internet services with download speeds up to 100 to 940 megabits per second, customers experience frequent and prolonged internet service outages and near constant sluggish internet speeds," which prevent customers from using the internet. (*Id.*) Plaintiff further alleges Defendant "continues to charge customers regardless of whether there are prolonged unreasonably slow download speeds and outages." (*Id.*)

Plaintiff filed this putative class action in Nevada County Superior Court on September 28, 2020, alleging claims for violation of California's Consumers Legal Remedies Act ("CLRA"), violation of California's Unfair Competition Law ("UCL"), and breach of contract. (*Id.* at 7.) Plaintiff seeks various remedies, including damages, restitution, declaratory relief, and injunctive relief. (*Id.* at 21–22.) On November 9, 2020, Defendant removed the action to this Court pursuant to the Class Action Fairness Act ("CAFA"). (ECF No. 1.) Defendant filed the instant motion to compel arbitration and stay litigation on February 4, 2021, citing an arbitration provision Plaintiff allegedly signed as part of his contract with Defendant. (ECF No. 13.)

### II. STANDARD OF LAW

The parties do not dispute that the Federal Arbitration Act ("FAA") governs Defendant's motion. 9 U.S.C. §§ 1–16. In deciding whether to compel arbitration, a district court typically determines two gateway issues: (1) whether a valid agreement to arbitrate exists; and, if it does, (2) whether the agreement encompasses the dispute at issue. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). "To evaluate the validity of an arbitration agreement, federal courts 'should apply ordinary state-law principles that govern the formation of contracts.'" *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). If the court is "satisfied that the making of the arbitration agreement or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. "[A]ny doubts concerning the scope of arbitrable issues

should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). If a court "determines that an arbitration clause is enforceable, it has the discretion to either stay the case pending arbitration, or to dismiss the case if all of the alleged claims are subject to arbitration." *Hoekman v. Tamko Bldg. Prod., Inc.*, No. 2:14-cv-01581-TLN-KJN, 2015 WL 9591471, at *2 (E.D. Cal. Aug. 26, 2015) (citation omitted).

### III.   ANALYSIS

The parties do not dispute that the scope of the arbitration provision encompasses Plaintiff's claims. Rather, the only dispute is whether an enforceable agreement exists in the first place. Plaintiff argues: (1) Defendant has not provided sufficient evidence of Plaintiff's assent; and (2) the arbitration provision is unenforceable. The Court will address the arguments in turn.

#### A.   Plaintiff's Assent

"[U]nder California law, mutual assent is a required element of contract formation." *See Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). "In the context of electronic consumer agreements or transactions, mutual assent frequently turns on whether the consumer had reasonable notice of a merchant's terms of service agreement." *Needleman v. Golden 1 Credit Union*, 474 F. Supp. 3d 1097, 1103 (N.D. Cal. 2020) (citing *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1173 (9th Cir. 2014)). "Reasonable notice requires that a user have either actual or constructive notice of an agreement's terms." *Id.* "Constructive notice occurs when a consumer has inquiry notice of the terms of service and takes an affirmative action to demonstrate assent to them." *Id.* "Inquiry notice . . . hinges on whether a reasonably prudent user would have been aware of the applicable terms." *Id.*

Defendant argues Plaintiff agreed to a Residential Services Agreement ("RSA"), which included an arbitration provision. (ECF No. 13-1 at 6.) Defendant emphasizes that Plaintiff's own Complaint acknowledges a valid contract exists and even includes a breach of contract claim. (*Id.* at 10 (citing ECF No. 1-1 ¶ 61 ("Plaintiff . . . formed a contract with Defendant. The terms of that contract included a provision that [Defendant] would provide broadband internet services in return for payment by Plaintiff.").) Defendant argues Plaintiff "cannot deny that he assented to the arbitration provision in the very contract under which he brings his claims." (*Id.*)

3

1    As further evidence of the agreement, Defendant submits a declaration from Jeffrey Kelly.
2 (ECF No. 13-2.) Kelly states he has worked for Altice USA (Defendant's parent company) as a
3 Vice President for Field Services for the region that includes California since January 1, 2021.
4 (*Id.* at 2.) Kelly held various operations for Defendant's company since November 2011, prior to
5 the Altice USA acquisition. (*Id.*) Kelly asserts he is familiar with Defendant's services to
6 California customers, such as Defendant's installation user guides, training of installation
7 technicians, the RSA, and billing statements for California customers. (*Id.*) Kelly also indicates
8 he is familiar with Defendant's corporate records, which were created or maintained in the regular
9 course of business. (*Id.*) Kelly states Defendant's records show that a field services technician
10 came to an address in Truckee, California for which Plaintiff ordered Defendant's high-speed
11 internet services. (*Id.*) Kelly states that as a matter of routine business practice at the time of
12 Plaintiff's order, Defendant would send a new customer an order acceptance email that included a
13 link to the then-current version of the RSA on Defendant's website.[1] (*Id.* at 3.) After the new
14 customer scheduled an appointment for a field services technician to install the necessary
15 equipment and activate the customer's internet services, Defendant would send an email
16 reminding the customer of the appointment, which again included a link to the then-current
17 version of the RSA on Defendant's website. (*Id.*)

18    At the appointment, Defendant required the field services technician to present Plaintiff or
19 his authorized representative with a mobile device running an application containing several
20 screens that Plaintiff or his authorized representative were required to interact with in order to
21 complete the installation and activate his service. (*Id.*) One of the screens contained a hyperlink
22 to the RSA that the customer could press to review the full text of the then-current RSA on the
23 device. (*Id.*) In order to complete the installation process, Plaintiff or his authorized
24 representative was required to enter a signature on the mobile device under a series of
25 acknowledgments that included, among other statements, that "you agree to the terms and

---

[1] Defendant attaches a copy of the RSA as it appeared on its website in April 2016 as Exhibit A. (ECF No. 13-3 at 1–23.) Defendant attaches a copy of the current RSA as it appears on its website as Exhibit B. (ECF No. 13-4 at 1–16.)

conditions of the [RSA]" and that "you acknowledge that the [RSA] CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES."[2] (*Id.* (emphasis in original).) Lastly, Kelly asserts Plaintiff's monthly billing statements for Defendant's services since October 2019 referenced the RSA, stating that payment of the bill "confirms your acceptance of the Residential Services Agreement, viewable at suddenlink.com/terms-policy."[3] (*Id.*)

In opposition, Plaintiff argues Defendant failed to provide evidence that he agreed to the arbitration provision.[4] (ECF No. 14 at 14.) Plaintiff correctly points out that Defendant fails to provide evidence of Plaintiff's signature or that Plaintiff ever clicked on the hyperlink for the RSA. (*Id.*) Plaintiff further argues Kelly's declaration does not indicate who signed the device (Plaintiff or his representative), nor does it provide screenshots of the hyperlink that Plaintiff would have purportedly seen. (*Id.* at 15.) Plaintiff argues Defendant's evidence, such as the example screenshot from the Suddenlink ETADirect User Guide and the billing statements, is insufficient to show Plaintiff knowingly consented to arbitration. (*Id.* at 15–19.)

In sum, the evidence before the Court includes: (1) Plaintiff's general allegations about entering into a contract with Defendant; (2) a declaration regarding Defendant's routine business practices, which indicates Plaintiff or his authorized representative were required to sign acceptance of the RSA — along with an acknowledgement that the RSA contained an arbitration

---

[2] Defendant attaches as Exhibit C a copy of an example screenshot from the Suddenlink ETADirect User Guide for Technicians showing the text displayed to customers on the signature capture screen. (ECF 13-5 at 1.)

[3] Defendant attaches as Exhibit D copies of Plaintiff's billing statements from October 2019 through September 2020. (ECF No. 13-6 at 1–25.)

[4] Plaintiff objects to Kelly's declaration to the extent it is based upon inadmissible legal conclusions, was prepared for this litigation, and was not regularly kept as part of Defendant's business practice. (ECF No. 14 at 10.) The Court OVERRULES Plaintiff's objection. This evidence is admissible under Federal Rule of Evidence 406, which states "[e]vidence of . . . an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice."

provision — as a condition of the installation and activation of Defendant's services; and (3) billing statements that indicate Plaintiff confirmed his agreement to the terms of the RSA by paying his monthly bill.

The Court concludes the foregoing evidence is sufficient to show by a preponderance of the evidence that Plaintiff assented to the arbitration provision. *See Norcia v. Samsung Telecomm's Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) ("[T]he party seeking to compel arbitration . . . bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence.") (citation and internal quotation marks omitted). Plaintiff makes much of the fact that Defendant fails to provide evidence of his signature or that he ever accessed the hyperlink to the RSA. (ECF No. 14 at 14.) However, Plaintiff has not provided *any* evidence to rebut Defendant's evidence that a field services technician came to an address on April 26, 2016 to install high-speed internet services Plaintiff ordered from Defendant. (ECF No. 13-2 at 2–3.) Plaintiff fails to rebut Defendant's evidence that routine business practices were followed, which Kelly indicated would include requiring Plaintiff's signed acceptance of the terms of the RSA, providing notice that the RSA contained an arbitration provision in all caps, and giving Plaintiff ample opportunity to access the RSA before, during, and after the installation process.[5] (*Id.*) Plaintiff's lack of evidence is fatal to his argument. *See Xinhua Holdings Ltd. v. Elec. Recyclers Int'l, Inc.*, No. 1:13-CV-1409 AWI SKO, 2013 WL 6844270, at *5 (E.D. Cal. Dec. 26, 2013), *aff'd sub nom. Clean Tech Partners, LLC v. Elec. Recyclers Int'l, Inc.*, 627 F. App'x 621 (9th Cir. 2015) ("[T]he party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate," and "[t]he required showing mirrors the showing that is

---

[5] Plaintiff also argues there is no valid contract because Defendant did not comply with state and federal requirements regarding electronic assent. (ECF No. 14 at 19.) Plaintiff cites the Uniform Electronic Transactions Act ("UETA") (California Civil Code § 1633.1) and a section of the federal E-sign Act (15 U.S.C. § 7001(c)(1)(B)). (*Id.* at 19–20.) The Court agrees with Defendant that there is sufficient evidence (and no evidence to the contrary) that Plaintiff consented to use of electronic signature for the purposes of the UETA. Cal. Civ. Code § 1633.5(b). Moreover, the portion of the E-sign Act Plaintiff cites only applies to the use of electronic records when "a statute, regulation, or other rule of law requires that information relating to a transaction . . . be provided or made available in writing." 15 U.S.C. § 7001(c)(1)(B). Plaintiff offers no evidence to suggest that Defendant violated either of these two statutes, or any authority to suggest the statutes are relevant in the instant case.

necessary to defeat summary judgment"); *see also Cuadras v. MetroPCS Wireless, Inc.*, No. CV 09-7897 CAS AJWX, 2011 WL 11077125, at *6 (C.D. Cal. Aug. 8, 2011) (finding defendant's evidence that its standard business practice was to provide customers with a copy of the terms and conditions of service and the plaintiff activated lines of service on four separate occasions was sufficient to show the plaintiff's assent and noting that the plaintiff did not submit any evidence challenging the defendant's evidence).

Plaintiff similarly does not dispute that he received multiple billing statements that indicated "payment confirms your acceptance of the Residential Services Agreement, viewable at suddenlink.com/terms-policy" in black and blue font on white background, usually on the same page as the total amount due. (*See* ECF No. 13-6 at 3, 5, 7, 10, 13, 15, 17, 19, 21, 23, 25.)  The billing statements alone are arguably enough to put Plaintiff on inquiry notice of the terms of the RSA, including the arbitration provision.  *See Hart v. Charter Commc'ns, Inc.*, No. SACV170556DOCRAOX, 2017 WL 6942425, at *4 (C.D. Cal. Nov. 8, 2017), *aff'd,* 814 F. App'x 211 (9th Cir. 2020) ("[G]iving notice of new terms of service — such as including a link to a website with changed governing terms in a mailed billing statement — can be sufficient notice to bind an offeree-consumer."); *see also* Cal. Civ. Code § 1589 ("A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting.").

Absent any evidence to the contrary, the aforementioned evidence is sufficient to show by a preponderance of the evidence that Plaintiff had — at the very least — constructive notice of the arbitration provision and assented to those terms.  *See Needleman*, 474 F. Supp. 3d at 1103; *see also Norcia*, 845 F.3d at 1283.

        B.    <u>Enforceability</u>

Plaintiff next argues the arbitration provision improperly waives the right to public injunctive relief and is unenforceable on other grounds.  (ECF No. 14 at 21, 23.)  The Court will address Plaintiff's arguments in turn.

///

///

7

*i.     Public Injunctive Relief*

Plaintiff first challenges the class action waiver in the RSA, which states:

> All parties to the arbitration must be individually named and there shall be no right or authority for any claims to be arbitrated or otherwise tried on a class action or consolidated basis or through a representative. The arbitrator may not consolidate proceedings or more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding.

(*Id.* at 22.) Plaintiff argues this provision seeks to bar public injunctive relief and therefore violates the rule from *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017). (*Id.* at 22–23.) "Under the [*McGill*] rule, insofar as a contractual provision purports to waive [a party's] right to request in any forum . . . public injunctive relief, it is invalid and unenforceable under California law." *Hodges v. Comcast Cable Commc'ns, LLC*, — F.4th —, 2021 WL 4127711, *3 (9th Cir. Sept. 10, 2021). "[N]on-waivable 'public injunctive relief' within the meaning of the *McGill* rule refers to prospective injunctive relief that aims to restrain future violations of law for the benefit of the general public as a whole, rather than a discrete subset of similarly situated persons, and that does so without requiring consideration of the individual claims of non-parties." *Id.* at *10.

Looking to the Complaint, Plaintiff seeks damages and restitution for himself and class members, as well as "declaratory and injunctive relief . . ., including enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify . . . victims of its conduct and pay them restitution and disgorgement." (ECF No. 1-1 at 21–22.) Plaintiff vaguely argues "the nature of [requested] relief serves the public interest." (ECF No. 14 at 21.) The Court disagrees. While "[a]t least some (but not all) of these requested forms of relief seek forward-looking prohibitions against future violations of law, . . . that alone is not enough to classify the remedy as public injunctive relief within the meaning of the *McGill* rule." *Hodges*, 2021 WL 4127711, at *10. "[U]nlike the public injunctive relief sought in *McGill*, . . . these requests on their face stand to benefit only" Defendant's internet services customers. *Id.* In other words, the remedies Plaintiff seeks "will only benefit a 'group of individuals similarly situated to the plaintiff.'" *Id.* (quoting *McGill*, 2 Cal. 5th at 955.) "There is simply no sense in which this relief could be said to primarily benefit the general public as a more diffuse whole." *Id.* (citing

*McGill*, 2 Cal. 5th at 955 (relief that incidentally benefits the public does not suffice to convert private relief to public relief)).

Accordingly, the Court concludes the arbitration agreement is not invalid under *McGill* because Plaintiff seeks an injunction benefitting primarily those who would qualify as purported class members, not the general public.

          *ii.*    *Unenforceability*

Plaintiff argues the RSA is unenforceable on four other grounds: (1) the RSA expressly permits Defendant to sue its customers in court to collect debts allegedly owed to it, but prohibits these same customers from bringing an action in a court of law against Defendant concerning a billing dispute they might have; (2) the arbitrator may not award punitive damages or any other damages; (3) the RSA also purports to limit the statute of limitations for Defendant's customers — but not Defendant — to initiate arbitration within one year or, in the case of a billing dispute, within thirty days; and (4) the RSA requires Defendant's customers to submit to a pre-arbitration process in advance of and as a condition precedent to having their dispute resolved through binding arbitration, but it does not require the same of Defendant. (ECF No. 14 at 22–25.) Plaintiff argues the Court should refuse to sever the unlawful provisions and should instead find the entire agreement unenforceable. (*Id.* at 25.)

In reply, Defendant argues the current version of the RSA does not include the debt-collection exception, the limitation on punitive damages, or the one-year statute of limitations that Plaintiff challenges. (ECF No. 17 at 13.) Defendant further states it has agreed not to enforce any of the challenged provisions against Plaintiff. (*Id.* at 13, 15 n.6.) Defendant also emphasizes that the challenged provisions are severable. (*Id.* at 15.)

Defendant's offer not to enforce the challenged provisions — and the fact that the current version of the RSA does not contain most of those provisions — arguably renders Plaintiff's remaining arguments moot. In any event, Plaintiff has not persuaded the Court that it should invalidate the entire contract based on these four provisions that appear to be "collateral to the main purpose of the contract." *See Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1273 (9th Cir. 2017) (stating that in determining whether to sever the challenged provisions, "the dispositive

question is whether the central purpose of the contract is so tainted with illegality that there is no lawful object of the contract to enforce"). Accordingly, the Court rejects Plaintiff's arguments and concludes that the operative arbitration provision in the current RSA is enforceable.

### IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's Motion to Compel Arbitration (ECF No. 13) and STAYS the case pending completion of arbitration of Plaintiff's individual claims. The parties shall notify the Court within thirty (30) days of completing arbitration.

IT IS SO ORDERED.

Date: November 2, 2021

Troy L. Nunley
United States District Judge